Opinion delivered March 17, 1888.

---

No. 2468.

## CONRAD JACKSON v. THE STATE.

1. GRAND JURY—INDICTMENT.—In a murder case the defense moved to quash the indictment on the ground that the grand jury by whom it was presented was not a legal grand jury because, at the time of the presentment of the indictment, one of the duly impaneled grand jurors was not within the jurisdiction of the court, and was domiciled in an-

other State. *Held,* that the motion to quash was properly overruled; the legality of the grand jury was not affected by the absence of one of its members. Drake v. The State, *ante,* approved on this question.

2. MURDER—INDICTMENT FOR MURDER charged that the accused "did with malice aforethought kill and murder" the deceased. The defense objects to the indictment because it does not charge that the homicide was *unlawfully* done, etc. *Held,* that the objection is without merit, and the indictment sufficient.

3. CHARGE OF THE COURT—RULE IN WEBSTER'S CASE.—In a trial for murder the defense asked a special instruction upon the law controlling circumstantial evidence, which instruction was refused by the trial court. See the opinion of this court for an instruction on the subject given by the trial court in its general charge, and *held* to be correct and sufficient, and therefore justifying the refusal of the special instruction asked by the defense.

4. CHARGE OF THE COURT—TIME AND VENUE—PRACTICE.—In a murder case it is objected that the jury were not instructed that the killing must have been done in the county and at or about the time alleged in the indictment. But the record shows that the defendant, in open court, admitted that the deceased was killed in the county and on the day alleged in the indictment. *Held* that the objection is futile. The facts being thus admitted and in no way contested, there is no error.

5. PRACTICE—COSTS.—The trial court adjudged the costs against a defendant capitally convicted of murder in the first degree. This court affirms the conviction; but reforms the judgment as to the costs.

APPEAL from the District Court of McLennan. Tried below before the Hon. Gustav Cook, on exchange.

The conviction in this case was in the first degree for the murder of John Talley, in McLennan county, Texas, on the sixteenth day of July, 1887. The death penalty was assessed against the appellant.

Harvey Wilcox testified, for the State, that he did not know the defendant, but he did know the deceased, who was shot and killed on July 16, 1887. Witness and his wife left their home a few minutes after five o'clock on that day to go to the house of the deceased for the purpose of milking for the deceased. They saw Mr. Talley plowing in his cotton field, and witness observed a man whom he did not know walking in a cotton row immediately behind Mr. Talley. The witness and his wife were then on a neighborhood road, about two hundred yards distant from Mr. Talley. Witness heard the report of a pistol or gun, and saw the man run around Mr. Talley to the head of his plow horse. That man unhitched Talley's plow horse, a bay animal, sprang on his back and left the field at full speed. The horse still had a can-

vas collar and blind bridle on. The man let down the field fence, passed out of the field, and approached within one hundred and fifty yards of witness and his wife. Thence he went toward the tank in Turner's pasture. Witness identified the horse as Turner's bay plow horse. He saw that the rider was a negro, who had on dark clothes and had a light colored hat which he used to whip the horse. Witness then went to the point where he had last seen Mr. Talley, and found him lying dead in a cotton row. He had been shot through the back of the head. Ella Wilcox, the wife of the witness, testified to the same facts.

Green Oliver testified, for the State, that, on the evening of July 16, 1887, he and Mary Slaughter went to the tank in Turner's pasture to get some water. On their way back, traveling in witness's wagon, witness saw the defendant, whom he knew well, leave Mr. Talley's field at a point where the fence had been let down. Defendant was riding Mr. Talley's bay horse, and was whipping the horse with his hat. The horse had on a canvass collar and blind bridle. When defendant saw witness and Mary Slaughter he turned abruptly from the course he was then pursuing and went in another direction. On his way to the tank witness saw Mr. Talley in his field plowing. No one was then with him. About two weeks before the said July 16, the defendant told witness that he was going to get a pistol and kill every man who owed him a nickel and failed to pay him; that the deceased was in his debt to the amount of sixteen dollars, and that he was going to East Texas to kill his father. Witness could not say that he was angry with defendant, but he did not like his "ways," and consequently had forbidden him to visit his house, and had warned him to avoid him, the witness. It was a few minutes past five o'clock on the evening of July 16, 1887, that witness saw defendant riding rapidly from Talley's field on Talley's horse.

Mary Slaughter testified, for the State, substantially as did Green Oliver, and declared positively that she identified the defendant as the man fleeing from Talley's field on Talley's horse.

Bob Mays testified, for the State, that, a few days before the murder of Mr. Talley, the defendant told him that Talley owed him, and that he would either whip or kill Talley unless he paid him.

Henry Ashburne testified, for the State, that Mr. Talley was killed on the evening of Saturday, July 16, 1887. Witness and

others got on the defendant's trail that night, and overhauled him on the next day at Fairfield, between fifty and sixty miles distant from the place of the killing.

Deputy Sheriff Dan Ford testified, for the State, that he was one of the party which arrested the defendant. That arrest was made at Fairfield on the day after the murder. In his pursuit of the defendant, witness found the defendant's shoes and hat, which he dropped in his flight.

Jim Mohair testified, for the State, that he met defendant at a colored people's celebration in June, 1887. He got to teasing defendant about his ragged clothes, when defendant told him that Talley owed him sixteen dollars, and that, if Talley did not pay that money, he intended to kill him.

The State closed.

Willis Green testified, for the defense, that defendant was in the employ of witness's son on the Saturday that Talley was killed. Defendant went to bed on that night in a hack that stood in witness's yard. During that night two men came to witness's house and asked witness's son where the defendant, whom they said they wanted, was. Witness's son told them that defendant was in the hack. About that time witness heard defendant jump out of the hack, and knew that he was not there when the men got there. The defendant owned no pistol while he was at witness's house. Witness saw defendant at Lewis Owen's place, near the village of Mart, when he, witness, went to Mart on the fatal Saturday. He was still at Owen's house when witness passed, going home, on that evening.

Sebe Wiley testified, for the defense, that he saw defendant and Shep Green in Turner's pasture on the evening of Saturday, July 16, 1887. He saw them separate and go in different directions while in that pasture.

The motion for new trial raised the questions discussed in the opinion.

*Henry Pickles*, for the appellant: In view of the severity of the sentence passed by the lower court upon appellant, and of the importance of several of the points urged as errors in this case, appellant begs permission of this court to offer a few suggestions in addition to the assignments of error made in his brief already filed herein.

I. It is respectfully submitted that it is absolutely necessary there should always be *subject to duty*, during the sessions of

the grand jury, twelve members, though the actual presence of nine in the grand jury room when indictments are found, or in the court room when they are presented, will suffice to render the action of the grand jury legal. In the case at bar there were only eleven men whose attendance could, by any process known to our law, have been enforced, no matter what emergency required the presence of the twelfth man. He was beyond the jurisdiction of the court, and *in fact*, was domiciled and actually engaged in business in the state of Missouri.

Nine members constitute a quorum of the grand jury; but, in order to have a quorum, there must first be an actually existing and legally constituted body. The organization must be kept intact. Was the pretended grand jury that assumed to act in this case such a body ? Was not its autonomy destroyed when the twelfth man, the keystone, so to speak, dropped out, and by his absence became disqualified to act in concert with the others? The appellant was entitled to the attendance of the entire number of grand jurors until the indictment was legally presented. He has the right to assume that the grand juror Edmonds was opposed to the finding of the indictment, and might have persuaded his co-jurors to reconsider their action, had he remained with them. Edmonds testifies that he left McLennan county to accept a position on the Globe-Democrat, in St. Louis, and intended to remain there as long as his relations with the management of that paper remained pleasant. This evidences the fact that his abandonment of his duties as a grand juror was not temporary, but was expected and hoped to be *permanent*. He did in fact remain out of the jurisdiction of the court until the grand jury had finally adjourned for the term.

II.　It is understood that this question has already been passed upon by this court, but attention is again invited to a consideration of it. It is submitted that malice aforethought is not always sufficient of itself to make a killing murder in the first degree; notably in the case of a killing done in punishment for insulting words to a female relative. These cases usually show the most evident malice aforethought, expressed, and yet our law has declared that a killing done under such circumstances is not sufficiently unlawful to be punished as murder. As a general proposition, nothing is an offense *per se*, but only becomes so when committed in violation of some law. It is then unlawful, and to compel a citizen to submit to arrest and trial

he should be notified that he has done some act deemed by the law to be an unlawful one.

III.   In appellant's motion for a continuance it was urged that the State would endeavor to prove flight as a criminating circumstance against defendant, and the testimony of the absent witness was desired to contradict that theory.   On the trial the witnesses Ashburne, Turner and Ford were introduced by the State to prove the flight of appellant ; thus corroborating the statement made in appellant's motion, and showing the materiality of the evidence of Doc. Watkins, the absent witness. (Walters v. The State, 17 Texas Ct. App., 226.)

Appellant's motion for a continuance was contested by the introduction of the affidavits of Ashburne and Chumney, that they had lived in the neighborhood for years, had inquired for Watkins and had never heard of him.   It is submitted that such testimony is of little weight when placed in the balance with the testimony of the witness Green, that Doc. Watkins was at his house on the night of the alleged homicide, and that he heard him talking with appellant.   Nor can it be said that the testimony of the witness Watkins would be merely cumulative because the same fact had been proven by the witness Green.   This is not an objection that can be urged to a first application for a continuance.   The defendant has a right to prove a material fact by any number of witnesses within the bounds of reason.   (18 Texas Ct. App., 576; 19 Texas Ct. App., 1.) Diligence was shown in the motion for a continuance, and was not denied by the State.

IV.   The court should charge *all* the law applicable to the case and to all the material issues made by the evidence and pleadings. Unless the crime charged against appellant in this case was committed (if committed at all) in McLennan county, Texas, the jury could not, no matter what facts were brought before them, be justified in finding him guilty.   The plea of "not guilty" puts in issue every fact necessary to constitute the crime—the venue as well as the act.

V.   In the case at bar the evidence introduced by the State was purely circumstantial, and the guilt of the appellant could have been determined by the jury solely as an inference.   It was not shown that there had been a previous quarrel, and the deceased and appellant were seen talking together for some little time before the shot was heard.   The shot was never seen, and there was much in the case to authorize a distinct and clear

charge on the law of implied malice. It is submitted that the appellant was fairly entitled to have the difference between express and implied malice lucidly explained to the jury, and this court is asked to examine the charge of the court *a quo* and say whether the jury could find such a distinction between the two therein as would instruct a jury as to what would authorize or demand a finding of the latter. It is not sufficient that the jury *might*, under that charge, failing to understand the difference, have found the lesser offense; they should have been plainly told of the circumstances that would have *necessitated* their so finding.

*W. L. Davidson*, Assistant Attorney General, for the State: The first error assigned urges that the indictment should have been quashed because said indictment was not presented by a legal grand jury constituted as required by law, for the reason that one of the persons who had been impaneled as a grand juror, to wit, William Edmonds, was not in the State when the bill was presented to the court, but was in St. Louis, Missouri, and had been excused by the court. It is shown by ex parte affidavits that the said juror, Edmonds, had been properly sworn in as a member of the grand jury, and was present and voted on the indictment in this case. It is also shown by the same means that at the time of the presentation of the bill, he had been excused for the term, and was gone out of the State, but that his home was in Waco, McLennan county, Texas, and he lived there as his residence.

It occurs to me that this question is fully settled in Smith's case, 19 Texas Court of Appeals, 95, and adversely to appellant's position. However, he is urging it, and I will, therefore, call the court's attention to it. I doubt seriously if the record can be attacked by these ex parte affidavits, and it is certain that this error is not apparent of record. The record shows that the bill was presented by a legal quorum.

In the Smith case, the record showed affirmatively that one grand juror had been excused by that body, and it was so noted on the minutes of the court. It can, therefore, be assumed, I think, that the entry was the action of the court, and became the act of the court in that case. (And so it was in this case, but not of record.) Viewing it in that light, this court reviewed that matter and held that the trial court had "no authority to discharge a single juror, after being impaneled for

the term, any more than the grand jury has." If the court below could entertain the ex parte statements of the grand jurors as to this matter, still the court was without authority to discharge the juror.   (Smith v. The State, 19 Texas Ct. App., 108.)

But, if the statements are taken into consideration, it is shown that Edmonds, the excused juror, passed on this indictment before he was discharged, and agreed to it. Then the indictment was his act. It was not necessary for him to be present at the presentation in court of the bill, if there were nine members of that body present at the time. This would be equally true as to the finding of the bill by the grand jury. (Constitution, art. 5, sec. 13; Code Crim. Proc., art. 390.) The jury as a body was properly constituted, and consisted of the proper number. (Code Crim. Proc., art. 368; Constitution, art. 5, sec. 13.) As it was duly constituted, there is no power that can excuse a single member of that body. (Smith v. The State, 19 Texas Ct. App., 107.) That organization still remained in full force till as a body, they were excused, at least while nine remained. (State v. Miller, 3 Ala., 343.)

The Constitution being imperative that the gran  and petit juries shall consist of twelve men, the wisdom of that instrument is shown in authorizing nine grand jurors to return bills and transact business generally. It was evidently intended to guard against such contingencies as this case presents, or against sickness and other causes that might deplete the body of some of its members, so that nine could always transact the matters and things provided for by the law for them to transact. The reason of this qualification is too obvious to need comment.

The second error assigned is that the court erred in not setting aside the indictment because it failed to charge that the defendant did "*unlawfully*" kill and murder the deceased. The indictment charges that defendant "did then and there, with malice aforethought, kill and murder John Talley," etc. This is sufficient. It was not necessary to allege that the killing was "unlawfully" done. (Thompson v. The State, 36 Texas, 326; Bean v. The State, 17 Texas Ct. App., 68; Walker v. The State, 19 Texas Ct. App., 176; Sharp v. The State, 17 Texas Ct. App., 486; Bohannon v. The State, 14 Texas Ct. App., 271. See especially, 17 Texas Ct. App., 68, Bean v. The State.)

The third assignment of error is because the court failed and refused to give a special charge on circumstantial evidence asked by appellant. The law of circumstantial evidence had

been fully charged, and very favorably to the defendant, by the court, and where a charge is once given it is not error to refuse to give a special charge on the same subject. (Pocket v. The State, 5 Texas Ct. App., 552; Proffit v. The State, 5 Texas Ct. App., 51; Cordova v. The State, 6 Texas Ct. App., 445; Phillips v. The State, 6 Texas Ct. App., 44; Hunter v. The State, 8 Texas Ct. App., 75; Heard v. The State, 9 Texas Ct. App., 1; Brown v. The State, 9 Texas Ct. App., 81; Brownlee v. The State, 13 Texas Ct. App., 255; Bohannon v. The State, 14 Texas Ct. App., 271, and many other cases.)

There was no error in refusing the continuance in this case. 1. The testimony shows that the expected evidence is not true, nor probably true. 2. Because the record shows that no such witness was at the place where the defendant slept on the night following the murder. 3. Because there is no such man as "Doc Watkins."

The next error assigned says the court failed to charge the jury that, in order to convict the defendant, they must believe from the evidence that the killing occurred in McLennan county, at or about the time alleged in the indictment. To this it is replied that the venue was fully proven. There was no question in the case raised as to that issue; it was beyond cavil. The court charged the jury that if they believed that the defendant, Conrad Jackson, did, as charged in the indictment, etc., they should convict, in connection with submitting murder in the first degree. Then, again, he submitted this: "as charged in the indictment," in connection with murder in the second degree. This was sufficient, especially when no question is, or can be, raised by the record. It was not an issue as a defensive matter, at all.

Hurt, Judge. This is a conviction for murder in the first degree, with the death penalty assessed.

On motion to quash, it was contended that the grand jury which presented the bill of indictment was not a legal grand jury, from the fact that one of the twelve members originally impaneled was, at the time of the presentment, not within the jurisdiction of the court, being domiciled in the city of St. Louis, Missouri. This precise question has been decided by this court in Drake v. The State (ante, p. 293), and it is there held that the legal existence of the grand jury was not affected by the ab-

sence of one of its members.   There was no error in refusing to quash the indictment.

The indictment alleges that the defendant "did, with malice aforethought, kill and murder John Talley, by then and there shooting said John Talley," etc.   It is objected that the indictment is bad in that it does not allege that defendant did "unlawfully" kill, etc.   That such an allegation is not necessary is the settled law of this State.

The defense asked a special charge upon the rule applicable to cases in which the State relies upon circumstantial evidence to convict, which was refused, and this is assigned as error.

In the main charge the learned trial judge gave in charge to the jury the following instruction:  " The defendant is presumed to be innocent until his guilt is established by the evidence, to the satisfaction of the jury, beyond reasonable doubt, and this case, you are also advised, depends upon circumstantial evidence, in which it is necessary that each fact tending to show the guilt of defendant, if such there be in evidence, must be contistent with every other such fact in evidence, and the whole must consist together and establish the guilt of defendant, and exclude any and every other reasonable hypothesis than his guilt, to your satisfaction, beyond reasonable doubt, to warrant his conviction; and, unless it does so, you will find the defendant not guilty."   We think this clearly and precisely states the rule of the law upon this subject, and that there was no error in refusing a supplemental charge upon this branch of the case.

Complaint is made that the charge is defective in that the jury was not instructed that, in order to convict, "they must believe from the evidence that the killing, if done at all, was done in McLennan county, Texas, at or about the time alleged in the indictment."   From the statement of facts, it appears that:  "It is admitted by the defendant in open court that the deceased, John Talley, was killed on the sixteenth day of July, 1887  *  *  *  in McLennan county, Texas."   The court instructed the jury as follows: "If you believe from the evidence *  *  ·  *   that the defendant, Conrad Jackson, did, as charged in the indictment," etc.   The venue not being contested in any way, and being an admitted fact, there was no error.

We have carefully examined each of the assignments of error, and are of the opinion that there is shown no cause for a reversal of the judgment.   The judgment erroneously awards costs

against the defendant.    It that respect, it will be here corrected, and in all other matters affirmed.    It is so ordered.

*Ordered accordingly.*